**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02020-CMA-KMT

KIMBERLY L. ANDREE,

      Plaintiff,

v.

JOSEPH HOY, Individually and in his official capacity as
    Sheriff of Eagle County,

      Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      In this employment discrimination case, Plaintiff Kimberly L. Andree brings claims

for (1) retaliation under Title VII; (2) procedural due process under 42 U.S.C. § 1983;

and (3) breach of contract under state law.  Jurisdiction is proper over Plaintiff's federal

civil rights claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and over

Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

Currently before the Court is the Motion for Summary Judgment filed by Defendant,

Sheriff Joseph Hoy.  (Doc. # 42.)  For the reasons discussed below, the Court grants

the motion.

## I.  BACKGROUND

      The Eagle County ("the County") Sheriff's Department hired Plaintiff in 1983.

(Doc. # 42, ¶ 1.)  In recent years, she served as Defendant's administrative lieutenant.

(*Id.*, ¶¶ 4-5; Doc. # 1, ¶ 5.)  As an administrative lieutenant, Plaintiff was in charge of

Defendant's office operations.  (Doc. # 1, ¶ 5.)  In 2010, the County was facing

significant revenue reductions, and the Board of County Commissioners told Defendant

that he would need to cut his Department's budget by $2 million.  (Doc. # 42, ¶ 6.)

During this same time period, the County offered early retirement packages to its

employees.  (*Id.*, at ¶ 9.)

On February 16, 2010, County attorney Bryan Treu asked Plaintiff and other

employees to gather information for an investigation pertaining to a charge of gender

discrimination filed by another employee of the Sheriff's Department, Sharon McCole-

Pons.  (Doc. # 41, ¶ 22; Doc. # 41-18.)

At the end of June, 2010, Plaintiff met with Defendant and told him that she was

considering retiring, but that she wanted a severance package, including two years of

salary, eighteen months of insurance benefits, and other benefits, including assistance

in maintaining her Peace Officer Standards and Training ("POST") certification and

concealed weapons permit.  (Doc. ## 41, ¶ 13; 42, ¶¶ 10-11.)  Defendant asked Plaintiff

to continue working until after his upcoming election (in November 2010) but

"reportedly" agreed to the severance package, saying, "I like it.  Let's do it."[1]  (Doc. # 42,

¶ 11.)  Additionally, Plaintiff agreed to continue working until the election.  (*Id.*)  In

anticipation of her pending retirement, Plaintiff began training her replacement, Jesse

---

[1]  Although Defendant denies that he ever agreed to Plaintiff's proposed severance
package (*see* Doc. # 10, ¶ 7), for purposes of the instant motion, Defendant appears not to
challenge the "reported" agreement (*see* Doc. # 42, ¶ 11).

Mosher, who was already employed by the Department, on some of her job duties.  (*Id.,* ¶ 13.)

On August 17, 2010, Plaintiff sent Defendant an email, with an attached list of items to include in her severance package, so that the Department's Human Resources Director, Lisa Ponder, could "get the papers prepared."  (Doc. # 36-9; Doc. # 42, ¶ 15.)  In her email, Plaintiff noted, "If there is somthing [*sic*] missing or somthing [*sic*] that you dont [*sic*] want on there we can change it and then send it to Lisa."  (*Id.*)  Defendant then forwarded Plaintiff's email, with her list of severance package items, to Ponder.  (*Id.*)  In September 2010, Defendant met with Plaintiff and told her that the County would not agree to give her the proposed severance package.  (Doc. # 42, ¶ 16.)  In response, on September 13, 2010, Plaintiff sent an email with a proposal for another package.  (Doc. # 36-10.)  On September 17, 2010, Ponder emailed Defendant and Plaintiff, stating that the County had "no wiggle room" regarding the amount Plaintiff could receive for her severance.  (Doc. # 36-11.)  Meanwhile, sometime in September, before an Equal Employment Opportunity Commission ("EEOC") mediation for McCole-Pons, Plaintiff met with Treu and told him the County should treat McCole-Pons well because Plaintiff could understand the point McCole-Pons was making in her charge.  (Doc. # 41, ¶ 25.)

On October 8, 2010, Plaintiff sent Ponder an email, asking: "Could you send me the information on how to file an EEOC Complaint?"  (Doc. # 36-15.)  Plaintiff e-mailed Ponder again on October 13, 2010, stating: "[j]ust a phone number would be fine."

(Doc. # 36-16.)  On October 20, 2010, Plaintiff sent an email to both Ponder and Defendant, stating, "I am filing a complaint with the EEOC and it will be completed by Friday October 22, 2010."  (Doc. # 36-18.)

Defendant was re-elected as Sheriff on November 9, 2010.  (Doc. # 42, ¶ 31.) On November 15, 2010, he notified Plaintiff that he was eliminating her position for budgetary reasons.  (*Id.*, ¶ 33.)  Plaintiff's job duties were redistributed to other employees including, primarily, Mosher.  (*Id.*, ¶ 34.)

On November 16, 2010, Plaintiff completed an EEOC intake questionnaire form and sent it to the EEOC.  (*Id.*, ¶ 35.)  On November 27, 2010, Plaintiff filed a Charge of Discrimination with the EEOC, alleging sex discrimination.  (*Id.*, ¶ 36.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 272, 248 (1986)).  A dispute of fact is "genuine" if "there is sufficient evidence on each

side so that a rational trier of fact could resolve the issue either way." *Id.* (citing

*Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a

genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* at

670-71. In attempting to meet that standard, a movant who does not bear the ultimate

burden of persuasion at trial need not disprove the other party's claim; rather, the

movant simply needs to point to a lack of evidence for the other party on an essential

element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving

party "to set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its

pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific

facts that would be admissible in evidence in the event of trial from which a rational trier

of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or specific

exhibits incorporated therein. *Id.*

## III.  ANALYSIS

## A.    TITLE VII RETALIATION CLAIM

Title VII's anti-retaliation provision prohibits an employer from discriminating

against an employee because she has "opposed any practice made an unlawful

employment practice by this subchapter" (the so-called "opposition clause"), or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the "participation clause"). 42 U.S.C. § 2000e-3; *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (noting that the two clauses of the anti-retaliation provision are known as the "participation clause" and the "opposition clause.")  A plaintiff can prove retaliatory treatment by direct or circumstantial evidence.  *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  When, as here, a plaintiff relies largely on circumstantial evidence, the Supreme Court has directed courts to apply a three-step, burden shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether summary judgment is appropriate. *See Bragg v. Office of the Dist. Atty., Thirteenth Judicial Dist.*, 704 F. Supp. 2d 1032, 1049-50 (D. Colo. 2009).

Under *McDonnell Douglas*, the plaintiff has the initial burden to present a *prima facie* case of retaliation.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).  If the plaintiff can make out a *prima facie* case, the burden shifts to the employer to show a legitimate non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 806; *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994).  If the employer can offer such a reason, the case should be dismissed on summary judgment, unless the plaintiff can show that the proffered reason

was merely a pretext for retaliation.  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210,

1216 (10th Cir. 2002).

      1.    *Prima Facie* Case of Retaliation

To state a *prima facie* case for retaliation, a plaintiff must show that: (1) she

engaged in protected opposition or participation; (2) she was subjected to an adverse

employment action;[2] and (3) a causal connection exists between the protected activity

and the adverse action.  *Kendrick*, 220 F.3d at 1234; *see also Vaughn v. Epworth Villa*,

537 F.3d 1147, 1150 (10th Cir. 2008).

On the facts presented in the instant case, the Court determines that Plaintiff

engaged in protected activity.  Plaintiff's initial email to Ponder – asking, "Could you

send me the information on how to file an EEOC Complaint?"  (Doc. # 36-15) – was

inadequate as a basis for protected activity, insofar as the email did not convey to

Ponder why Plaintiff was asking for the information.  *See Hinds v. Sprint/United Mgmt.*

*Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to

qualify as protected opposition the employee must convey to the employer his or her

concern that the employer has engaged in a practice made unlawful by [Title VII].")

Additionally, the email was sent to Ponder, not to Defendant, despite the latter's

responsibility for making final termination decisions.  *See Jones v. U.P.S., Inc.*, 502 F.3d

1176, 1195 (10th Cir. 2007) ("Unless an employer knows that an employee is engaging

---

[2]  Defendant does not dispute Plaintiff's assertion that she was subjected to an adverse employment action.  Therefore, the Court's discussion is limited to the first and third elements of the *prima facie* case.

in protected activity, it cannot retaliate against that employee because of the protected

conduct . . . .").   However, Plaintiff's October 20, 2010, email to Defendant and

Ponder, stating in no uncertain terms that she would be filing a charge with the EEOC,

did convey this information, at least implicitly; Plaintiff did not have to provide extensive

details about her charge against Defendant to convey that she was concerned

Defendant had engaged in an unlawful practice.

The parties have cited no case, nor is the Court aware of any, in which the Tenth

Circuit has decided whether notifying an employer of one's intention to file a charge

constitutes protected activity – as either opposition or participation – under Title VII.[3]

However, the EEOC's Guidance Manual states that "[t]hreatening to file a complaint

with the [EEOC] . . . is a form of [protected] opposition," 2 EEOC Compliance Manual

§ 8-II(B)(2), and the Supreme Court has specifically deferred to the Manual before in

interpreting Title VII's opposition clause, *see, e.g.*, *Crawford*, 555 U.S. at 276-77

("EEOC compliance manuals reflect a body of experience and informed judgment to

---

[3] Other circuits have held that announcing an intent to file a charge with the EEOC constitutes protected "opposition." *See, e.g.*, *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982) ("We see no legal distinction to be made between the filing of a charge which is clearly protected, and threatening to file a charge").  Likewise, others have held that such conduct constitutes protected "participation."  *See, e.g., Jefferies v. Harris Cnty. Comm. Action Assoc.*, 615 F.2d 1025, 1035 (5th Cir. 1980) (informing employer of intention to file EEOC charge as protected under Title VII's participation clause); *see also Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999) (dicta) ("Retaliation may have a chilling effect regardless of whether an employer acts after a formal complaint has been filed or after it knows one is to be filed."); *Croushorn v. Board of Trustees of Univ. of Tenn.*, 518 F. Supp. 9, 21-22 (M.D. Tenn. 1980) (holding that "participation" clause protected an employee who announced intention to file a charge, because "[t]here is nothing talismanic about the filing of a charge.  [. . .]  The [improper] motivation is the same whether the charge has actually been filed or is simply imminent.") (internal citations omitted).

which courts and litigants may properly resort for guidance.") (internal citation and

quotation marks omitted).  Moreover, the Tenth Circuit has noted that Title VII "protects

conduct short of filing a formal charge," including "voicing informal complaints to

superiors."  *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007) (citing *Hertz v.*

*Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)).  For these reasons, the Court

finds that Plaintiff has provided adequate evidence of protected activity to meet the first

prong of the *prima facie* case.[4]

Additionally, Plaintiff provides adequate evidence that a "causal connection exists

between the protected activity and the adverse action."  *Kendrick*, 220 F.3d at 1234.  A

causal connection can be inferred from the fact that the challenged action closely

follows on the heels of the employee's protected activity.  *PVNF*, 487 F.3d at 804-05.

In the instant case, Plaintiff was notified of her position's elimination on November 15,

2010[5] – twenty-six days after she sent her October 20, 2010 email, notifying Defendant

---

[4]  Plaintiff also contends that she took additional actions which constituted protected activity.  However, the Court need not address this additional evidence, in light of the analysis above.

[5]  In his Motion, Defendant states that it is "undisputed that the termination decision pre-dated Plaintiff's protected activity," pointing to his affidavit, which indicates that he decided to terminate Plaintiff (and another employee) in September of 2010.  (Doc. # 42, 18.)  County attorney Treu also testified in a deposition that in the first or second week of October 2010, Defendant told him that he was planning on laying off Plaintiff but was going to wait until the November election to announce this decision.  (Doc. #42-13 at 39:14-40:13.)  If a jury were to believe that Defendant made the termination decision before finding out about Plaintiff's protected activity, Defendant would prevail on this issue.  *See Sabourin v. Univ. of Utah*, 676 F.3d 950, 958-59 (10th Cir. 2012) (in FMLA retaliation case, plaintiff could not prove a causal connection between his taking of FMLA leave and his termination, because the employer circulated a memo stating she planned to terminate an employee as part of a reduction in force prior to learning from plaintiff he was going to take FMLA leave); *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) ("Unless an employer knows that an employee is engaging in

of her plans to file a charge with the EEOC.  *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (indicating that twenty-four days between protected activity and adverse action gives rise to an inference of causal connection); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (indicating that forty-two days between protected activity and adverse action gives rise to inference of causal connection).

Further, special circumstances in this case support the inference of a causal connection.  Defendant admitted that he wanted to delay notifying Plaintiff of his decision to eliminate her position until after the election on November 9, 2010, because if he lost the election, he thought it best to leave it to the incoming Sheriff to decide how to make the required budget cuts.  (Doc. # 42-3 at 185:2-21.)   In this respect, the instant case is similar to *Wells v. Colorado Department of Transportation*, 325 F.3d 1205, 1216-17 (10th Cir. 2003), in which the Tenth Circuit found that a five-month period was not too long of a time lapse to establish causation, explaining that there were "special circumstances" involved:

> The reason that a five-month gap generally does not in itself suffice to establish causation is that anger or resentment – the motivation for possible retaliation – is an emotion that tends to diminish with time. When retaliation for an act occurs well after the act, one wonders why the

protected activity, it cannot retaliate against that employee **because of** the protected conduct . . . .") (emphasis added).  However, unlike in *Sabourin*, Defendant does not provide a memo regarding his decision to terminate Plaintiff in September of 2010; instead, the Court only has Defendant's sworn statement that he had made this decision at that point.  Ultimately, resolution of this fact would turn on an evaluation of Defendant's credibility (as well as an evaluation of Treu's credibility).  Accordingly, viewing this deposition evidence in the light most favorable to Plaintiff, as it must, for purposes of this motion the Court determines that Defendant made the decision at some point after Plaintiff's October 20, 2010 email.

> retaliator failed to act sooner.  In this case, however, Plaintiff was on leave
> during most of the time between her filing the CEEO [Center for Equal
> Employment Opportunity] complaint . . . and her transfer and reassign-
> ment.  Even if [her supervisor] had a desire to retaliate for the November
> complaints, it did not make sense for him to do so until Plaintiff returned to
> work.  In fact, that is just what happened – only days after Plaintiff's return
> to work in April, the transfer and reassignment were effectuated.

Similarly here, Plaintiff was notified that her position was being eliminated only five days

after it "made sense" for Defendant to so notify her (*i.e.*, after he was re-elected).

Accordingly, Plaintiff has established a *prima facie* case of discrimination.

2.    Whether Defendant's Legitimate, Nondiscriminatory Reasons for
       Eliminating Plaintiff's Position Were Pretextual

Although Plaintiff has established a *prima facie* case of retaliation, Defendant has

provided a legitimate, nondiscriminatory reason for its adverse action, asserting that he

eliminated Plaintiff's position because he was required to cut $2 million from the

Sheriff's Office budget.  (Doc. # 42, ¶ 6.)  Defendant contends that he decided to cut

Plaintiff's position in particular because his command staff was top-heavy; none of the

previous personnel reductions had included cuts to his command staff; he did not want

to impact the Department's core law enforcement functions of patrol, investigations, and

detentions; and he felt that Plaintiff's duties could be most easily absorbed by other staff

members.  (Doc. # 42, ¶ 20.)

As previously stated, if an employer can offer a legitimate, nondiscriminatory

reason for its actions, the case should be dismissed on summary judgment, unless the

plaintiff can show that there is a genuine dispute of material fact as to whether the

Defendant's reasons were merely a pretext for retaliation.  *Miller v. Auto. Club of New*

*Mexico, Inc.*, 420 F.3d 1098, 1123 (10th Cir. 2005); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  A plaintiff may show pretext by producing evidence which demonstrates that the employer's proffered reason for acting adversely is "unworthy of belief," *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (internal citation omitted), and she can do so by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons," *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation omitted).  Additionally, the Supreme Court has instructed that a defendant is entitled to summary judgment if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue, and there is abundant and uncontroverted independent evidence that no discrimination had occurred.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

Plaintiff points to two pieces of evidence which she argues demonstrate that Defendant's reasons were pretextual.  Although Plaintiff does not dispute that the budget for the Sheriff's Department needed to be cut by $2 million, she contends that there were multiple budgetary options to decrease costs and increase revenues so as to make the requisite cuts without eliminating her position.  Specifically, she provides evidence of other proposed budgets that were considered by Defendant, which did not include cutting her position.  In other words, Plaintiff questions whether it was **truly necessary** for the Department to eliminate her position, or whether other positions – or

12

budget line-items, for that matter – should have been eliminated instead. In doing so, she is challenging a business decision of the Sheriff's Department. However, the law is well-established that Title VII is not a vehicle for reviewing even "unwise" business decisions. *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997). The reason for this rule is simple: the Court's role is to "prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

Budget cuts can, indeed, be a legitimate, nondiscriminatory reason for terminating an employee. *See, e.g., Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238-39 (10th Cir. 2002) (internal citation omitted) ("a reduction-in-force or restructuring that results in an elimination of jobs often is a legitimate reason for dismissing an employee"); *see also Washington v. Board of Pub. Utils.,* 939 F.2d 901, 903 (10th Cir. 1991) (affirming a grant of summary judgment to a defendant where the plaintiff produced "no evidentiary matter even suggesting that [defendant's] business decision [to reclassify a position and subsequently phase out a department] was a pretext for the purpose of discriminating against plaintiff"); *Trujillo v. Univ. of Colo. Health Scis. Ctr.,* 157 F.3d 1211, 1215 (10th Cir. 1998) (holding defendant's nondiscriminatory reason to lay off plaintiff due to budget cuts not pretextual); *Pope v. Quivira Council,* 312 Fed. Appx. 101, 104 (10th Cir. 2009) (unpublished) (same).

In essence, Plaintiff has failed to offer evidence other than the mere existence of additional budgetary options that would not have involved the elimination of her position.

She did not offer, for example, evidence that Defendant hired a new employee, after cutting her position, to fill a similar position for a similar salary.  If the Court were to comb through Defendant's proposed budgets and weigh conflicting budgetary options, it would be doing precisely that which it cannot do: second-guessing Defendant's business decisions and acting as a "super personnel department."  *See Young*, 468 F.3d at 1250.  Accordingly, evidence regarding the other budgetary alternatives does not create a genuine dispute of material fact regarding Defendant's motive for eliminating Plaintiff's position.

Second, Plaintiff merely points to the temporal proximity between her protected conduct and subsequent termination.  However, evidence of even close temporal proximity, without more, cannot demonstrate pretext; "while timing can suffice to support a *prima facie* case of discrimination, it will not satisfy a Title VII plaintiff's burden to respond to an articulated, non-discriminatory reason for the challenged adverse employment action."  *McGowan v. City of Eufala*, 472 F.3d 736, 744 n.4 (10th Cir. 2006); *see also Annett v. Univ. of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004) (noting that while evidence of temporal proximity can meet the "relatively lax burden" of establishing the *prima facie* case, it cannot also serve as a "proxy" in proving pretext, "where the burden is more demanding and requires a plaintiff to assume 'the normal burden of any plaintiff to prove his or her case at trial'") (internal quotation omitted); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) ("close temporal proximity suggests pretext, but is not sufficient by itself to raise an issue of fact").

After careful review, the Court finds that the evidence, even when taken in the light most favorable to Plaintiff, is insufficient for a reasonable jury to conclude that Defendant's proffered reason is "unworthy of belief."

## B.    DUE PROCESS CLAIM

Plaintiff also brings a claim under 42 U.S.C. § 1983, alleging that by failing to pay her agreed-upon severance package (consisting of the previously mentioned employment benefits), Defendant breached a contract and deprived her of property without due process in violation of the Fourteenth Amendment.  The Court assumes, without deciding, that Defendant breached a contract with Plaintiff.[6]

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law," *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  However, "'it is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim.'" *Cross Continent Dev., LLC v. Town of Akron, Colo.*, 742 F. Supp. 2d 1179, 1187 (D. Colo. 2010) (quoting

---

[6]  For a contract to exist, a meeting of the minds as to the essential elements of the contract must be shown.  Based on the facts set forth in section I, above, the Court is skeptical that Plaintiff could prevail on her breach of contract claim.  However, as discussed in subsection C, below, the Court declines to exercise supplemental jurisdiction over Plaintiff's breach of contract claim, which arises under state law, and thus the Court will not address the merits of the claim here.  Instead, the Court assumes that a breach of contract occurred only to the extent necessary to analyze Plaintiff's due process claim.

*Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 831 (6th Cir. 2009)

(unpublished)); *see also DeBoer v. Pennington,* 287 F.3d 748, 750 (9th Cir. 2002) (there

is no due process claim where "the contract has not given rise to a greater interest than

the contract itself, and so a wrongful termination of the contract may be fully remedied

by a common law breach of contract action"); *Ramsey v. Bd. of Educ. of Whitley Cnty.,*

*Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988) ("A state breach of contract action is most

clearly an adequate remedy for a property deprivation when the only basis for federal

jurisdiction is that a state actor is one of the contracting parties.").

Indeed, the Supreme Court has twice held that a simple breach of contract claim

against a state does not give rise to a claim under Section 1983.  In *Shawnee*

*Sewerage & Drainage Co. v. Stearns,* 220 U.S. 462 (1911), the Court held that when

"[a] simple breach of contract is . . . alleged[,] . . .  [t]he breach of a contract is neither

a confiscation of property nor a taking of property without due process of law."  More

recently, in *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001), the Court

reaffirmed this holding.  In *Lujan*, the state of California withheld payment from a public

works subcontractor, and the subcontractor sued the state under Section 1983.  *Id.* at

196-97.  The Supreme Court characterized the subcontractor's interest as merely a

contractual interest – "deprivation of payment that it contends it is owed under a

contract" – and held that this interest did not give rise to a Section 1983 claim, as it

could be adequately protected through a breach of contract suit.  *Id.* at 196.  In contrast,

an interest involving a "present entitlement" – where the claimant is "denied a right by

virtue of which he was presently entitled either to exercise ownership dominion over real

16

or personal property, or to pursue a gainful occupation" –  would not be similarly

protected by an ordinary breach of contract lawsuit.  *Id.  See also Baird v. Bd. of Educ.*

*for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 691-92 (7th Cir. 2004) ("The

underlying concept [of a present entitlement] seems to be that the remedy [must be]

available before the loss has become complete and irrevocable.").

      Here, Plaintiff contends that there are three "present entitlements" that would

prevent an ordinary breach-of-contract suit from fully vindicating her property interests.

Under Plaintiff's alleged severance agreement, Defendant was required to (1) provide

her with assistance in maintaining her POST certification; (2) provide her with a

concealed weapons permit; and (3) allow her to remain as a volunteer and unpaid

consultant for the Department.  (Doc. # 41, ¶ 13.)

      As for the first two benefits, Plaintiff fails to provide evidence that a breach of

contract suit could not provide injunctive relief which would obligate Defendant to assist

her with obtaining or maintaining her certification and permit.  Plaintiff cites Defendant's

testimony, which indicates that the POST certification only required Plaintiff to take

classes at the Sheriff's Office, and that the concealed weapons permit only required

the Sheriff's Office to fill out some paperwork.  (Doc. # 41-1 at 59:22-61:12.)  However,

even assuming that the certification and permit were somehow impossible to obtain

without the Department's involvement,[7] Colorado law allows specific performance –

---

      [7] Plaintiff does not provide evidence indicating that the **only** way that she could have obtained a POST certification or a concealed weapon's permit was through the Sheriff's office. Assuming it might have been possible – but more difficult – to obtain these items without the Department's involvement, the difference in difficulty could be reduced to money damages.

an equitable remedy – to fulfill the legitimate expectations of a promisee, assuming that there is no other "plain, speedy, adequate remedy at law." *See Szaloczi v. John R. Behrmann Revocable Trust*, 90 P.3d 835, 842 (Colo. 2004).

Additionally, Plaintiff's interest in serving as a continuing unpaid volunteer consultant to the Department is not a property interest, much less a present entitlement. A public employee may possess a property interest in her employment if she has tenure, an explicit or implied contract for a fixed term of employment, or if state law allows for her dismissal only for cause or its equivalent. *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007); *see also Dickey v. Adams Cnty. Sch. Dist. No. 50*, 773 P.2d 585, 586 (Colo. App. 1988) (citing cases). In Colorado, absent one of these conditions, a employee is presumed to be employed at-will and can be terminated without cause or notice, and such termination does not give rise to a cause of action or violate due process. *Rooker v. Ouray Cnty.*, 841 F. Supp. 2d 1212, 1217 (D. Colo. 2012) (citing *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997)). Plaintiff has not shown that any of these conditions existed here.[8] Indeed,

---

*Cf. Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1362 (10th Cir.1989) (denial of injunctive relief was not an abuse of discretion where damages were reasonably calculable based on the evidence presented at trial).

[8] Plaintiff cites Colo. Rev. Stat. § 30-10-506, for the proposition that "before Hoy breached the agreement with [Plaintiff], he had an obligation to notify her of the proposed revocation . . . and [she had] an opportunity to be hear[d] on such revocation." (Doc. # 41 at 15.) However, the plain language of the statute demonstrates it is inapplicable. It provides that "[b]efore revoking **an appointment** of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff." C.R.S. § 30-10-506 (emphasis added); *see, e.g., McLallen v. Taylor*, No. 10-cv-01187, 2012 WL 502697 (D. Colo. Feb. 15, 2012) (unpublished) (applying § 30-10-506 and holding that the Sheriff providing a deputy with a face-to-face meeting to explain his conduct prior to

under the alleged severance agreement, she would have been a  volunteer, and

certainly would have been at will, leaving her with no property interest in continued

volunteering.  *See Bishop v. Wood*, 426 U.S. 341, 343, 347 (1976) (city police officer

had no property interest in continued employment that was entitled to the protections of

procedural due process because, under state law, officer held his position at will); *Hatch

v. Boulder Town Council*, No. 2:01-CV-00071, 2007 WL 2985001 (D. Utah Oct. 10,

2007) (unpublished) (plaintiff did not have a protectable property interest in her position

as a volunteer librarian, and employer did not violate her procedural or substantive due

process rights), *aff'd.*, No. 07-4239, 2009 WL 82699 (10th Cir. Jan. 14, 2009)

(unpublished).

Because Plaintiff's Section 1983 claim involves the same kinds of remedies as

her breach of contract claim, and because Plaintiff has not shown that the agreement

involved any "present entitlements," summary judgment in Defendant's favor is

appropriate on this claim.[9]

## C.     BREACH OF CONTRACT AND PROMISSORY ESTOPPEL CLAIM

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other

---

termination was an adequate "opportunity to be heard by the sheriff.")  In any case, Plaintiff did
not actually have her appointment revoked here, as she had already decided to retire in June
of 2010.  (Doc. ## 41, ¶¶ 12-13; 42, ¶¶ 10-11.)  Thus, if Defendant "revoked" anything, it was
Plaintiff's severance agreement.

[9]  Because summary judgment is appropriate based on these limited grounds, the Court
need not address Defendant's further arguments regarding qualified immunity from the § 1983
claim.

claims that are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III of the United States

Constitution."  However, a federal court may decline to exercise supplemental

jurisdiction over an otherwise related claim under subsection (a) when it "has dismissed

all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Indeed,

"[w]hen all federal claims have been dismissed, the court may, **and usually should,**

decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del*

*City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted) (emphasis

added); *see also Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("[T]he most

common response to pretrial disposition of federal claims has been to dismiss the state

law claim or claims without prejudice"); *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d

1472, 1478 (10th Cir. 1990) ("Notions of comity and federalism demand that a state

court try its own lawsuits, absent compelling reasons to the contrary." )  Because there

is no compelling reason why the Court should retain jurisdiction of the state-law claim,

and in light of the foregoing authorities, the Court declines to exercise supplemental

jurisdiction over Plaintiff's remaining state law claim and thus, dismisses the claim

without prejudice.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary

Judgment (Doc. # 42) is GRANTED WITH PREJUDICE as to Plaintiff's Title VII

retaliation and 42 U.S.C. § 1983 claims, and WITHOUT PREJUDICE as to Plaintiff's remaining state law claim for breach of contract and promissory estoppel.  It is

FURTHER ORDERED that the Final Trial Preparation Conference set for January 22, 2013, and the seven-day Jury Trial set to commence on February 4, 2013, are VACATED, and this case is DISMISSED.  It is

FURTHER ORDERED that, while each party shall bear its own attorneys' fees, Defendant shall have his costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment.

DATED:  November __30__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge